IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

          v.                    CRIMINAL NO. 08-50075-009

JOSE M. ALVARADO                         DEFENDANT/MOVANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

On October 28, 2010, the Defendant/Movant Jose M. Alvarado (hereinafter "Defendant")

filed a 28 U.S.C. § 2255 motion.  (Doc. 278).  The Government filed a Response on November

29, 2010.  (Doc. 281).  Defendant filed a Reply on December 21, 2010.  (Doc. 283).   On

January 18, 2012, the undersigned conducted a hearing, at which, the Defendant and his trial

counsel, Larry Froelich, testified.  The matter is before the undersigned for issuance of a Report

and Recommendation and is now ripe for consideration.

**Background**

On October 1, 2008, Defendant was named in three counts of a nine-count Indictment

filed in the United States District Court for the Western District of Arkansas.  (Doc. 38).  Count

One charged Defendant with conspiring to distribute more than 50 grams of a mixture or

substance containing methamphetamine, a Schedule II controlled substance, in violation of Title

21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii), and Title 21 U.S.C. § 846.  Count Two charged the

Defendant with conspiring to commit money laundering, in violation of 18 U.S.C. §§

1956(a)(1)(A)(I) and (h).   Count Three charged the Defendant with conspiring to use a

-1-

communication facility, namely telephones, to distribute methamphetamine, in violation of Title 21 U.S.C. §§§ 841(a)(1), 843(b) and 846.

On February 2, 2009, Defendant appeared, with his appointed counsel Larry Froelich, before Chief United States District Judge Jimm Larry Hendren for a Change of Plea Hearing. (Doc. 177). Defendant pled guilty pursuant to a written plea agreement, wherein he agreed to plead guilty to Count One of the Indictment in exchange for the Government's promise to move to dismiss Counts Two and Three. (Doc. 178). The plea agreement specified that Defendant faced a maximum term of imprisonment of 40 years and a mandatory minimum term of imprisonment of 10 years based on the stipulation that the offense conduct involved more than 500 grams of methamphetamine. (Doc. 178, p. 6). The plea agreement also set forth that the Government agreed to recommend that Defendant be sentenced within the applicable guideline range as determined by the Court; to not object to an acceptance of responsibility reduction, and to move for the additional one point of acceptance of responsibility if applicable; and to not object to a finding by the Court that the mandatory minimum sentence did not apply because the Defendant qualified under U.S.S.G § 5C1.2, the Safety Valve provision.

Subsequent to the change of plea hearing, Defendant filed a motion and an amended motion to withdraw his guilty plea. (Docs. 187, 191). In the motions, Defendant stated that on January 25, 2009, Defendant expressed to Mr. Froelich his desire to change his plea to guilty, and to modify his account of his involvement in the alleged conspiracy; and that on January 26, 2009, Defendant executed a plea agreement. Defendant stated that on January 30, 2009, he was assaulted while in the Benton County Detention Center by one of the co-defendants in the case.

-2-

Defendant stated that he believed the beating was a message from Juan Carrillo, "the central figure of the conspiracy in this case," and that he wanted to withdraw from the plea agreement at the change of plea hearing, but he was afraid to because of "the beating and his fear the Government [could] not protect him." Defendant further stated that he discovered new evidence after entering his plea. Specifically, the Defendant alleged that one of the co-conspirators in the case informed him that he knew Carrillo had threatened the Defendant. Defendant maintained that this evidence corroborated what "Defendant had always maintained...[-] that he gave Carrillo [his] truck [for a claimed drug debt] only because he and other members of his family had received death threats." (Doc. 191, pg. 2).

Defendant filed an affidavit in support of his motions (Doc. 194), stating that he believed he was innocent of voluntarily participating in a conspiracy to distribute drugs, and that he had consistently told Mr. Froelich from the beginning to prepare his case for trial. With this affidavit, Defendant filed two statements as Exhibits B and D.[1] Defendant alleged that he gave the statement in Exhibit B on January 24, 2009. In this statement, the Defendant stated that he thought he was picking up a box of fruit from Juan Carrillo and it was not until he opened the box the next day that he realized there were drugs in it. The Defendant stated that he got scared and flushed the drugs and Carrillo then began calling and threatening him and his family. The Defendant stated that "was when I thought of giving [Carrillo] my property, so he would leave me in peace."

Defendant alleged that he made a second statement, Exhibit D, after he agreed to plead guilty and his attorney told him that his previous statement was not sufficient to support a guilty

---

[1]Defendant also filed the original Spanish translation of each statement. These are listed as Exhibits A and C.

plea.  Defendant stated that in order to plead guilty, he changed his story in the second statement and made untruthful statements, essentially admitting that he knew Carrillo sold drugs and that he knew the box Carrillo gave him contained drugs.

A hearing on the motion to withdraw his guilty plea was held on April 14, 2009, at which Defendant testified that he was satisfied with the service and advice of his appointed counsel.  (Doc. 230, pgs. 3-4).  Judge Hendren denied Defendant's motion, finding, inter alia, that there was "nothing on which the Court could base any sort of holding that there's a possibility of actual innocence here," and that the Defendant's assertions forming the basis for the motion to withdraw his plea "were well known at the time that the [D]efendant and his attorney chose to take the action of entering the plea."  (Id., pgs. 30-31)

On August 13, 2009, Defendant appeared before Judge Hendren for a Sentencing Hearing.  (Doc. 231).  At this hearing, the Court stated, "You appear here this morning again with Mr. Larry Froelich and Mr. George Oleson as your attorneys.  Are you satisfied with their service to you and advice to you as your attorneys?" (Doc. 254, p. 3).  Defendant replied "Yes sir." Id.   The Court also heard Defendant's three objections to the presentence report: (1) that the mandatory minimum should not be applicable; (2) that there should be no upward adjustment for obstruction of justice; and (3) that there should be a reduction for acceptance of responsibility.  (Doc. 254, pgs. 7-17).  While not in Defendant's written objections, Defendant's counsel also argued that the "safety valve" should apply in Defendant's case.  (Id. at 17-19).

The Court overruled Defendant's three objections, approved the presentence report, and approved the plea agreement that was tentatively approved on February 2, 2009.  (Id. at 27-31).  The Court found Defendant's advisory sentencing guideline range without the mandatory

-4-

minimum would have been 91-121 months imprisonment,[2] but because of the mandatory minimum, the Court determined the advisory guideline range to be 120-121 months. (Id. at 32). Defendant was sentenced to 120 months imprisonment, 5 years supervised release, a $15,000.00 fine, and a $100 special assessment.   (Doc. 239).

Defendant appealed the denial of his motion to withdraw his guilty plea and his sentence. (Doc. 245).  On August 5, 2010, the Eighth Circuit affirmed the denial of Defendant's motion to withdraw his guilty plea and the Defendant's sentence. U.S. v. Alvarado, 615 F.3d 916, 920-923 (8th Cir. 2010).

On October 28, 2010, Defendant filed the instant Motion to Vacate under 28 U.S.C. § 2255.  (Doc. 278).  In his motion, Defendant claims that Mr. Froelich was ineffective because he failed to "caution/admonish" Defendant about the consequences of trying to withdraw his guilty plea and how this would impact the following:

a).     the downward departure for acceptance of responsibility;

b).     the downward departure for the safety valve; and

c).     the enhancement for obstruction of justice.

(Doc. 278, Attachment 1, p. 5).

On January 18, 2012, Defendant appeared before the undersigned for a hearing on the § 2255 motion.[3]   Defendant testified that Mr. Froelich was ineffective because he did not admonish Defendant about the consequences of filing the motion to withdraw his guilty plea.

---

[2]The presentence report indicates Defendant's advisory sentence guideline range was 97-121 months.

[3]Prior to questioning the witnesses, the Court entered two exhibits without objection from the parties: Court Exhibit 1: Copy of jail Visitation Records; and Court Exhibit 2: Copy of the CJA voucher submitted for payment by Larry Froelich. (Doc. 294).

Specifically, Defendant testified that Mr. Froelich did not inform him that, by filing the motion

to withdraw his guilty plea, Defendant might lose the reductions for acceptance of responsibility

and the safety valve, and that Defendant might receive an enhancement for obstruction of justice.

Defendant testified that had Mr. Froelich told him of these consequences, he would never have

sought to withdraw his guilty plea. The Court asked Defendant how many times Mr. Froelich met

with Defendant prior to the hearing on the motion to withdraw his guilty plea.  Defendant

testified that he had one discussion with Mr. Froelich regarding the withdrawal of his guilty plea.

When the Court questioned Defendant about the time and date entries in Mr. Froelich's CJA

voucher, which indicated that Mr. Froelich discussed with Defendant the potential risks involved

with filing the motion to withdraw his guilty plea on February 16, 2009,[4] and February 21, 2009,[5]

Defendant denied that Mr. Froelich never told him of the consequences.

---

[4] The entry for February 16, 2009, states as follows:

> Locate and fax jail records to prosecutor; study statutes and cases to determine if client adopted conspiracy by giving Carillo (sic) his truck and asking for "work;" re-study guidelines and minimums for effect of withdrawal of  plea; consider possible use of duress and coercion as defense; calls to and from translator; prepare for meeting with client about changing plea; drive to Benton County Detention Center; interview client and explain risks  involved in trial; loss of defense of duress and coercion; nevertheless, he wants to withdraw his plea.

(Doc.  294, Exhibit 2, p.10).

[5] The entry for February 21, 2009, states as follows:

> Study Rule 11, *U.S. v. Barnett*, determine elements of "fair and just reason;" *U.S. v. Austion, U.S. v.  Mugan, U.S .v. Smith*; to Benton County Detention Center to meet with client about plea change; client is firm.

(Doc. 294, Exhibit 2, p.11)

AO72A
(Rev. 8/82)

When the Court questioned Defendant about the CJA voucher entry on April 13, 2009,[6] which specifically mentioned discussing the loss of the safety valve and acceptance of responsibility, as well as the enhancement for obstruction, Defendant again denied that Mr. Froelich ever advised him of these possible consequences. Defendant was also questioned about the two inconsistent statements that he provided to the Court in support of his motion to withdraw his plea. In the first statement, Defendant stated that he believed he was picking up a box of fruit. In the second statement, Defendant admitted that he knew the box he picked up contained drugs. Defendant testified that the first statement was the correct one, and that, even after the hearing on the motion to withdraw his guilty plea, he continued to maintain that he thought he was picking up a box of fruit. When questioned if he recalled Mr. Froelich asking Defendant if he wanted to cooperate with the Government after the hearing on the motion to withdraw his guilty plea, Defendant testified that Mr. Froelich brought him a list with names, addresses and phone numbers asking if Defendant knew any of the people listed. Defendant testified that he told Mr. Froelich that he did not know anyone on the list. Defendant testified that prior to the sentencing hearing, Mr. Froelich asked him if he had any information to provide

---

[6]The entry from April 13, 20009, states as follows:

> To jail; meet with client; prepare for hearing; return; construct and confirm timeline of events; continue to prepare for hearing; calls from Anne Yancey; return call from prosecutor Elser; call to and from Atty. Snively about Zepeda about February 2 meeting with Alvarado at Federal Court; to Benton County Detention Center; review with client standard and burden of proof to withdraw plea, evidence we and prosecutor have, evidence of guilt, reasons to accept prior agreement, reason trial victory very unlikely results of today's research and meeting with Zepeda, new material from prosecutor, State's burden of proof, elements necessary for defense of duress, loss of safety valve and points for acceptance, and cost of obstruction.

(Doc. 294, Exhibit 2, p.13).

-7-

to the Government to possibly reduce his sentence, and that he told Mr. Froelich that he did not have any information to provide.

The Court would also point out that, according to the pre-sentence report, when the probation officer had the pre-sentence interview with Defendant subsequent to the hearing on the motion to withdraw his guilty plea, Defendant maintained that he thought that he was picking up a box of fruit from Carrillo, and that he did not realize the box contained drugs until he opened the box later at home.  When questioned about this interview at the § 2255 hearing, Defendant testified that when he was questioned by the probation officer he responded do you want the "truth" or "guilt."  When the probation officer said that she wanted the truth, Defendant testified that he told the officer "I thought I was picking up fruit."

Mr. Froelich testified that on February 15, 2009, he went to visit Defendant at the jail thinking that they were going to be discussing a possible transfer and the upcoming meeting with the probation officer.  Mr. Froelich testified that it was during this visit that Defendant told him that he wanted to withdraw his guilty plea.  Mr. Froelich testified that, after doing some research on the issue, he returned to the jail on February 16, 2009, to discuss with Defendant the potential risks in filing a motion to withdraw his guilty plea, which included that if Defendant denied that he was guilty it would be unlikely that he would receive the safety valve reduction.  Mr. Froelich testified that he told Defendant that he thought filing the motion would be a bad idea, and that he thought Defendant needed some time to think.  Mr. Froelich testified that he visited Defendant on February 21, 2009, and that Defendant insisted on filing the motion to withdraw his guilty plea.  Mr. Froelich testified that before Defendant was sentenced, the Government was still

-8-

willing to take a statement from Defendant, but that, because Defendant continued to maintain that he thought the box contained fruit, a statement was never given.

## Applicable Law

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims under 28 U.S.C. § 2255. See Caban v. United States, 281 F.3d 778, 781 (8th Cir.2002). In order for a convicted defendant to prove that his counsel was ineffective, the defendant must first show that counsel's performance was deficient. Strickland, 466 U.S. at 687. To do so, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Id. at 687-88. Judicial scrutiny of an attorney's performance must be highly deferential, and thus, the courts should employ a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 689. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. at 687. A defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

## Defense Counsel's Performance

Mr. Froelich testified that he informed Defendant of the risks involved with filing a motion to withdraw his guilty plea several times. While Defendant testified that he was never told of the potential consequences of filing such a motion, the undersigned finds that the evidence proves otherwise. Mr. Froelich's CJA voucher, which was submitted to the Court a

-9-

year prior to Defendant's filing of his § 2255 motion, clearly indicates that Mr. Froelich met with Defendant at the jail and discussed with him the possible consequences of filing a motion to withdraw his guilty plea.  Mr. Froelich's time entries are also supported by the Jail Visitation Log, which corroborates that Mr. Froelich visited Defendant on the dates indicated in the CJA voucher.

The Court credits Mr. Froelich's testimony, which is supported by the CJA voucher and the Jail Visitation Log,  and finds that Defendant was made aware of the consequences of filing a motion to withdraw his guilty plea, but that Defendant insisted on filing the motion anyway. The Court, therefore, finds that Mr. Froelich's representation of Defendant was not deficient. Even though Defendant has failed to show that his attorney's performance was deficient, the Court will nevertheless discuss the prejudice prong of the ineffective assistance analysis.

### Prejudice Prong

As stated above, Defendant was subject to a mandatory minimum sentence of 10 years imprisonment.  In his § 2255 motion, Defendant argues that he was prejudiced by his counsel's ineffective assistance because he would not have sought to withdraw his guilty plea and would have been eligible for safety valve relief under 18 U.S.C. § 3553(f), had his counsel properly advised him of the consequences of filing a motion to withdraw his guilty plea.  (Doc. 278, Attachment 1).  The Government argues that Defendant was ineligible for the safety valve "not because he filed a motion to withdraw his guilty plea but because he insisted, after pleading guilty, that he was in fact innocent of the charge."

Under 18 U.S.C. § 3553(f), a district court is permitted to grant safety-valve relief to a criminal defendant and impose a sentence below a statutory mandatory minimum if: (1) the

-10-

defendant does not have more than one criminal history point; (2) the defendant did not use violence or possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not found to be an organizer, leader, manager, or supervisor of others or to have engaged in a continuing criminal enterprise; and (5) the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense. 18 U.S.C. § 3553(f)(1)–(5); see also United States v. Alvarado–Rivera, 412 F.3d 942, 944–45 (8th Cir.2005) (en banc) cert. denied, 546 U.S. 1121 (2006). "Defendants have the burden to show affirmatively that they have satisfied each requirement for the safety valve, including whether truthful information and evidence have been given to the government." Id. at 947. The only element at issue here is whether Defendant satisfied the fifth requirement that requires:

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme of plan.

18 U.S.C. § 3553(f)(5).

In making an assessment of the truthfulness of a defendant's prior statements, a district court may consider discrepancies between the defendant's statements, as well as changes in his or her accounts over time. United States v. Guerra–Cabrera, 477 F.3d 1021, 1025 (8th Cir.2007). Additionally, the district court can draw reasonable inferences from the evidence and need not accept a defendant's innocent explanations for his apparently criminal conduct. United States v. Sanchez, 475 F.3d 978, 981 (8th Cir. 2007); see also United States v. Bolanos, 409 F.3d 1045, 1048 (8th Cir. 2005) (recognizing that a district court does not commit clear error in denying

-11-

safety-valve relief if it is plausible that the defendant was untruthful or inconsistent in her statements).

Defendant filed a motion to withdraw his guilty plea and submitted an affidavit stating facts to show that he was in fact innocent of the charged offense. The presentence report indicates that in an interview with the probation officer subsequent to the hearing on the motion to withdraw his guilty plea, Defendant continued to report facts to the probation officer that supported his claim of innocence. Defendant testified at the § 2255 hearing that he told the probation officer that he believed the box contained fruit.

The transcript from the Sentencing Hearing, further reveals that the Government had tried to contact Defendant prior to the hearing to offer him the opportunity to make a statement to satisfy the fifth requirement of the safety valve provision:

> ...With regard, again, to the safety valve, at the time, obviously, the Government said we would not object to a finding by the Court that the mandatory minimum sentence doesn't apply because the safety valve provision applies. For the safety valve provision to apply, Mr. Alvarado would have had to have given a statement to the Government regarding the offense conduct, a truthful statement, and discussed all evidence. I think that's the fifth requirement of the safety valve provision.
>
> Now at the time the Plea Agreement was entered, it was contemplated that Mr. Alvarado would sit down with the Government and discuss his involvement in this offense, and prior to that occurring, obviously, he filed this motion and asserted his innocence and said that he really didn't commit the offense.
>
> As late as this last month, the Government was still willing to meet with him on the condition that he truthfully disclose his involvement in the offense, and Mr. Froelich advised the Government that [the Defendant] was still maintaining his innocence, and so that condition of meeting with him could not be - - could not occur. So we don't believe that the conditions for acceptance of responsibility or the safety valve have been met in this case.

(Doc. 254, p. 23).

While the trial court did not specifically address the safety valve provision and whether Defendant met the five requirements, the transcript from the Sentencing Hearing shows that the trial court found Defendant "clearly falsely" stated that he was innocent of the charged offense:

> ...I would also agree that if a defendant had made a motion to withdraw his plea that was made in good faith, and even though if it were denied, that that wouldn't necessarily, in and of itself, amount to obstruction of justice. But I would say that in this case, it was more than that, because in connection with that motion, the defendant represented to the Court that the assertions that he made under oath at the plea colloquy were simply false.
>
> He also, in my opinion, clearly falsely stated that he was innocent, that he hadn't done what was alleged, that he didn't realize what was transpiring. He maintained that position all along, even with the probation officer. And so when you color in those aspects of the Motion to Withdraw, then it seems to me that the award of points for obstruction of justice is completely appropriate under the authorities that Mr. Elser cited and just on its face.

(Doc. 254, p. 28).

At the hearing on his § 2255 motion, Defendant acknowledged that he had been given the opportunity to make a statement to the Government prior to sentencing, but that he never made the statement because he had continued to claim his innocence. Defendant's testimony was corroborated by Mr. Froelich's testimony that a statement was never given because Defendant continued to claim that he thought the box contained fruit. Defendant continued to claim this even at the hearing on his § 2255 motion.

The record shows that the filing of the motion to withdraw his guilty plea was not the cause of Defendant's ineligibility for the safety valve provision. Defendant was not eligible for the safety valve provision because he failed to meet the fifth requirement of the provision wherein Defendant was required to truthfully provide to the Government all information he had

-13-

concerning the offense.  Defendant had up until the time of the sentencing hearing to make such

a statement, but he declined to do so, which rendered him ineligible for the safety valve relief.

    Because the record clearly shows that Defendant did not qualify for safety valve relief,

he was not prejudiced by the obstruction of justice points and not qualified for acceptance of

responsibility, as the Court could not have sentenced him below the mandatory minimum of 120

months imprisonment.  U.S. v. Sanchez-Gonzalez, 643 F.3d 626, 630, (8th Cir.2011) citing

United States v. DeCoteau, 630 F.3d 1091, 1098 (8th Cir.2011) (explaining that when a statutory

mandatory minimum applies, a district court can only sentence below the mandatory minimum

by granting safety-valve relief or through a motion by the Government for substantial assistance).

Therefore, the Court will not address Defendant's arguments regarding obstruction of justice and

acceptance of responsibility.

### Conclusion

    Based upon the forgoing, the undersigned recommends that the instant motion, filed

under 28 U.S.C. Section 2255, be dismissed with prejudice.

**    The parties have fourteen days from receipt of this report and recommendation in
which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file
timely written objections may result in waiver of the right to appeal questions of fact.  The
parties are reminded that objections must be both timely and specific to trigger de novo
review by the district court.**

    Dated this 26th day of January 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-